ARTHUR WALLS, Appellant, v. THE CROCKER STATE BANK, a Corporation, Respondent.

Springfield Court of Appeals, June 5, 1920.

1. **BANKS AND BANKING:** Bank Held not Entitled to Apply to Overdraft Money Owned by Another. Where depositor and plaintiff, who had sold depositor some mules, both notified defendant bank that out of money that would be sent to the bank as proceeds of the sale of the mules to be deposited in depositor's account plaintiff was to be paid for the mules he had sold to the depositor, defendant bank could not appropriate the fund to the depositor's indebtedness to it, as shown by an overdraft, and refuse to pay depositor's check to plaintiff for the purchase price of the mules.

2. **TRIAL:** Conflicting Evidence for Jury. Where the evidence on an issue is conflicting, it should be submitted to the jury.

3. **PAYMENT**: Whether Plaintiff Accepted a Note for his Claim, Held for Jury. Where plaintiff shipped mules in a car with mules belonging to a bank depositor, and before the animals arrived at destination the depositor bought plaintiff's mules, and the bank was advised that plaintiff was to be paid out of the money derived from the sale of mules, but, notwithstanding, the bank applied the amount received to satisfaction of a depositor's overdraft, so that a check given plaintiff was dishonored, evidence *held* wholly insufficient to raise for the jury the issue of that after the dishonor of check, plaintiff accepted note from depositor in satisfaction of the claim.

Appeal from Circuit Court of Pulaski County.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Sid C. Roach, Barney Reed* and *Argus Cox* for appellant.

(1) To constitute a valid contract the minds of the parties must assent to the same thing at the same time. Green v. Cole, 103 Mo. 70, 76; Sutter v. Reeder, 149 Mo. 293, 310, 311; Gaus & Son v. Chicago Lbr. Co., 115 Ap. 116, 119; Batavia v. R. R., 126 Ap. 13, 15, 16. (a) This assent may be shown in a variety of ways. There can be no fixed rule. The court cannot say what facts, or words, or acts of the parties will show an agreement between them. Each case must rest on its own facts and the triers of the facts, not the court, must determine the question. Botkins v. McIntyre, 81 Mo. 557, 560; Bruner et al. v. Wheaton, 46 Mo. 363, 366. (2) The law is that when the ground upon which a motion for new trial is sustained is set out in the order, the Appellate Court will hold that the trial Court found against all other reasons urged in the motion for new trial and, if the ground set out is not sufficient, the burden is then placed upon the respondent to show some other error that made it mandatory upon the trial Court to set the verdict aside. Bennett v. Met. St. Ry. Co., 10 S. W. 1050 (Mo. App.) Bradley v. Reppell, 133 Mo. 545; Candee v. R. R., 130 Mo. 142; Thiele v. Citizens Ry. Co., 140 Mo. 319; Haven v. Mo. Pac. R. R.

155 Mo. 216; Grain Co. v. R. R., 177 App. 194; State
ex rel. v. Ellison, 266 Mo. 423, 432.

*Eldridge & Bell* and *Torts & Breuer* for respondent.

(1) The granting of a new trial is discretionary with
the trial court, and unless it clearly appears that this dis-
cretion is grossly abused, Appellate Court will not inter-
fere. McWilliams v. R. R., 172 Mo. App. 1. c. 327; Kunzel
v. Stevens, 155 Mo. 280, 1. c. 285; Bank v. Armstrong, 92
Mo. 265; McCullough v. Ins. Co., 113 Mo. 606, 1. c. 619;
McKay v. Underwood, 47 Mo. 187; Corey v. Transit Co.,
186 Mo. 229. (2) A party in whose favor a new trial has
been ordered may on his adversary's appeal show that
the order was correct upon any other grounds stated in
his mortion for new trial, whether they were sustained
by the trial court or not. To do this it is not necessary
for him to either except to, or appeal from the order.
Ittner v. Hughes, 133 Mo. 679; Bradley v. Reppel, 133
Mo. 545, 1. c. 559; Emmons v. Quade, 176 Mo. 22; Dale
& Bennett v. Mining Co., 110 Mo. App. 317; Colm &
Grennon v. Ins. Co., 96 Mo. App. 315.

FARRINGTON, J.—The sole question involved in
this appeal is directed toward the action of the trial court
in granting a new trial on a motion therefor filed by the
defendant, the effect of which was to set aside the verdict
found by the jury for the plaintiff. The reason given
by the trial court for granting the new trial is as fol-
lows: "The court is satisfied from the evidence that
plaintiff's father, Cat Walls, by and with the knowledge
and consent of the plaintiff, took from George Mitschele
a note of $2,000 in settlement of the debt for the sale
of the mules, and that said note is still in the hands
of the plaintiff or his agent; which act on the part
of the plaintiff, or his agent, released the defendant
from any further obligation for the debt, if any exist-
ed."

The facts of the case are that the plaintiff shipped
fourteen mules to the St. Louis market in a car with
some mules belonging to one George Mitschele. Before
the mules were sold in St. Louis Mitschele purchased
the mules from the plaintiff for the sum of $145 each,

making a total of $2,030, it being agreed that plaintiff
would stand his proportionate part of the freight. When
the mules were sold, the purchaser in St. Louis for-
warded the money to the defendant, the Crocker State
Bank, to the credit of Mitschele, who was and for a long
time had been a customer of said bank. After selling
the mules, the plaintiff and Mitschele came back to
Crocker, and the evidence shows that they arrived at
Crocker before the money was returned from St. Louis
to the defendant bank. There is evidence from which
the jury could find that both Mitschele and the plain-
tiff talked with the officers of defendant bank and noti-
fied them that out of the money which would be sent
from St. Louis to their bank in the name of Mitschele,
plaintiff was to be paid for the fourteen mules Mitschele
had purchased. Mitschele, on finding that the money
had not arrived, gave the plaintiff a check for $2,000
on The Crocker State Bank and agreed that as to the
freight, they would adjust that later, the amount of
the check being made for $30 less than the amount the
mules sold for. The plaintiff took this check to his
home bank at Iberia, deposited it, got credit, and when
that check reached The Crocker State Bank payment
was refused. On investigation it was found that Mit-
schele was overdrawn with defendant some $1800, and
that when the money was returned for the mules which
had been sold in St. Louis—those which Mitschele
bought from plaintiff as well as the other mules which
he owned and shipped in the same car. The Crocker
State Bank charged Mitschele's account with about
$1800 and gave him credit on his account for the bal-
ance.

The petition of plaintiff sets up the charges that
The Crocker State Bank knew that Mitschele had pur-
chased these mules from him and that this money was
merely sent to The Crocker State Bank in Mitschele's
name to be paid over to the plaintiff, the sale being for
cash. Under these facts a bank cannot appropriate the
fund to the depositor's debts. [Leonard v. Martin, 214
S. W. 968.]

In the answer filed by The Crocker State Bank, and upon which the case went to trial, there was a denial of these facts. After all the evidence was in, the defendant then interposed an answer to the effect that after the $2,000 check had been turned down by defendant bank, the plaintiff, acting through his father as his agent, took from Mitschele a note as payment of the indebtedness represented by the check, which act discharged the defendant from any obligation which it owed.

We agree with respondent that if there is any substantial testimony in the record to the effect that a note was taken and accepted by the plaintiff, or any authorized agent for him, from Mitschele, then this would raise a question of fact to be determined by the jury, the plaintiff and his witnesses testifying that there was no such arrangement made or note accepted. And we further agree that the reason given by the court (copy of which is set out) would be a sufficient ground to uphold the action of the trial court on the ground that the verdict of the jury was against the weight of the evidence on this defense and that its action should not be interfered with on appeal. We, however, disagree with the respondent as to there being any substantial testimony that any novation or arrangement was made between plaintiff or his agent and Mitschele which would of itself discharge the obligation of The Crocker State Bank to pay this $2,000 check to plaintiff. As stated before, this defense was entirely an afterthought, put in by an amended answer after the testimony was in, which, of course, would be proper if there was testimony introduced showing that there had been an arrangement made which would release the defendant and which was not known to it until it came out during the examination of witnesses. The trouble, however, in this regard is that there is no evidence, as we view it, sustaining such contention. The evidence does show that when this check was turned down the plaintiff, a young man, was at home sick in bed and unable to attend to any business; that the officers of defendant bank stated

to Mitschele that the way to handle the matter was for him to satisfy the plaintiff in this case by giving him a good bankable note for the $2,000. The cashier of the Bank of Iberia called up plaintiff's father, who lived in the same county, and explained the situation to him as to the check being turned down. The father testified that he did agree with Mitschele that if Mitschele would produce a good bankable note, acceptable to the Bank of Iberia, he would sign it with Mitschele and settle the trouble in this way. Mitschele told him of several men he could get on the note that would make it good. The evidence also shows that Mitschele and the father of plaintiff, who we will assume was acting with authority for the plaintiff, both testified that Mitschele failed to get the signatures of certain men that made the note bankable.

The plaintiff says that he did not authorize his father to take a note for this debt. Be that, however, as it may, the testimony of all of the parties who were dealing with this bankable note proposition is that no such note was made according to agreement. The only evidence on this phase of the case as to the delivery of the note is that of Mitschele, who says that he gave a note to plaintiff's father signed by some men, and further says that it was not an acceptable note. Plaintiff's father testified that Mitschele handed him a note signed, which was not an acceptable and bankable note, and plaintiff's father testified that he took the note and told Mitschele that he would hand it to Clark, the cashier of the Bank of Iberia; that when he went to the bank the cashier was not there and that he handed it to his wife, and from here on there is utter darkness concerning the whereabouts or character of it. The evidence utterly fails to uphold the allegation that a note had been accepted from Mitschele in lieu of the dishonored check for $2,000.

The instructions to the jury concerning the fact that the mules were to be sold for cash, the question of defendant's knowledge that plaintiff had an interest of $2,000 in the draft which was to be sent to St. Louis,

and other questions raised in the case were properly submitted. There is no substantial error in the trial of the cause for which the verdict of the jury should be set aside, and the record fails to disclose that the reason given by the court in setting aside the verdict should be upheld. It is, therefore, ordered that the case be reversed and remanded, with directions to the trial court to set aside the order granting a new trial, to reinstate the verdict and render a judgment for plaintiff.

*Sturgis, P. J.*, and *Bradley, J.*, concur.